IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 6, 2010 Session

**SHERRY WATSON v. BEAZER WATSON**

**Appeal from the Circuit Court for Claiborne County**
**No. 9546      John McAfee, Judge**

**No. E2010-00577-COA-R3-CV - FILED DECEMBER 29, 2010**

This is a divorce action filed by Sherry Watson ("Wife") against Beazer Watson ("Husband"). Following a bench trial, the court granted the parties a divorce based on stipulated grounds. It also classified and distributed substantial property, some as separate and the rest as marital. Wife secured new counsel and filed motions, with supporting exhibits, challenging the classification and division of property. The motions purport to be pursuant to, respectively, Tenn. R. Civ. P. 59 and 60.02. The trial court denied the motions. Wife appeals the denial of her motions. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Johnny V. Dunaway, LaFollette, Tennessee, for the appellant, Sherry Watson.

David H. Stanifer and Lindsey C. Cadle, Tazewell, Tennessee, for the appellee, Beazer Watson.

**OPINION**

I.

A.

When the parties separated, they had been married for approximately five years. Both parties had been married numerous times before, and had grown children from those previous marriages. No children were born of this marriage. Wife was in her early forties and

Husband was in his early sixties when this proceeding was commenced. After Wife filed her complaint for divorce and Husband filed his counterclaim, the parties remained separated until the case was tried approximately two years later. The focus of the trial was on the identification, classification and distribution of property. The same is true on appeal.

B.

Wife testified that, other than one joint account, which we will discuss later in some detail, the parties maintained individual bank accounts during the marriage. She worked and deposited her money into an account in her individual name. According to Wife, she paid her "own" bills and Husband did the same. Her employer at the time of the marriage was England Corsair. She continued there for approximately two years into the marriage when she developed tendinitis and needed to change jobs. According to Wife, she was offered a new job with her employer, but Husband convinced her to come to work with him as a "partner" in his fence company. Husband denied making such an offer and testified that Wife was allowed to work as an hourly employee because she was unable to continue her previous job. The proof was undisputed that Wife was paid as an employee and deposited her check into her individual account. On or about the time of the parties' separation, Wife secured a job with a new employer making considerably more money than she had made as an "employee" of the fence company.

It is undisputed that, at the time of the marriage, Husband owned the house in which the parties lived during their marriage. The size of their home was nearly doubled by an addition made during the marriage. It is undisputed that Husband's elderly sister contributed at least $80,000 toward the addition with the understanding that she would be able to stay with her brother when she lost her independence. In fact, Husband's sister was living in the addition at the time of trial. Husband testified that $80,000 was the initial check deposited into a joint checking account in the names of Husband and Wife for the purpose of funding the construction of the addition. Wife readily admitted that she did not put any money into the account. Husband also testified that he did not put any money into the account. Numerous times during the trial, both parties and their counsel spoke in terms of $100,000 spent on the addition. Wife testified that there was $20,557.11 remaining in the account when Husband closed the account and deposited the balance into another account. Wife claimed that she was entitled to one-half of the funds in the joint account and one-half of the increase in the value of the house. She did not introduce proof of the value of the house before the addition. She did introduce proof that the value at separation was $256,500 and argued that the increase in value during the marriage was at least equal to the expenditures of $100,000.

One piece of real property that the parties acquired jointly was a lot adjoining the marital home. The parties agreed that the lot was marital property, but disagreed as to its value. Wife did not offer an opinion of value but testified that they paid $10,000 for the lot. Husband testified that they paid $2,800, as recited on the face of the recorded deed, but that the lot was probably worth $5,000.

It is undisputed that, at the time of the marriage, Husband owned a fence business known as Watson Fence Company. Husband claimed at trial that the business was a partnership with his grown daughter by a previous marriage. Husband and his daughter, Tina Watson, testified that they were equal partners. Husband was cross-examined with respect to his tax returns. They reflected that the fence business was a sole proprietorship.

During the marriage, numerous items of personal and real property were acquired using funds from the fence business. One of those items was a 2006 Ford F150 pickup truck worth approximately $20,000; it was titled in the name of Tina Watson. She testified that her father purchased the truck for her and that she was making payments to her father on it. She did not know if the fence company had paid for the truck. Husband testified that his daughter purchased the truck and paid for it out of the fence company, as was her right according to Husband. Both Husband and daughter claimed that the truck was hers, but they both admitted that it was frequently parked in Husband's driveway and that he often drove it. In fact, Husband admitted that he was the person who primarily drove the 2006 Ford.

Other property allegedly purchased with proceeds from the fence company were two lots comprising approximately two acres referred to at trial as "the Duncan Trail property." Wife testified that Husband promised the property to her grown son, Chad Yeary, as a wedding gift and that she was present when Husband agreed to purchase the lots from Eula Simmons and her husband for six equal monthly payments of $3,000. Wife testified that she later learned the property had been deeded by the Simmons to Tina Watson. Chad Yeary testified that he had been living on the property in a mobile home for almost two years. Yeary further testified that Husband told Yeary that he, Husband, would buy the property and give it to him as a wedding gift. Neither Husband nor Tina Watson were asked any questions at trial concerning the Duncan Trail property.

There was testimony concerning numerous other pieces of property, some of which one of the parties owned before the marriage, but most of which they purchased during the marriage. The property included a lot next to their house, boats, personal water craft, guns, motorcycles, mowers, and equipment used in the fence business paid for by the fence company.

## C.

The trial judge invited counsel to help him work through the disputed property to make sure he did not miss or mistakenly allocate any property. The bulk of the items were treated as marital property and awarded to one party with an "equity" allowance of one-half of the value of the item to the other. In total, Wife was awarded marital property valued by the court at approximately $24,500. Husband was awarded marital property valued by the court at approximately $45,000. Husband was ordered to pay Wife $10,500 to equalize the distribution.

The court found that the fence company was Husband's sole proprietorship and that there was no evidence that it increased in value during the marriage. The court acknowledged that the fence company purchased equipment, but the court noted that it did not have any proof as to the value of the equipment. It pointed out Wife's admission that she did not know the value of the equipment. The court found that Wife was a mere employee during the time that she worked for the fence company and that she never became a partner.

The court found that the marital home was Husband's separate property, and that there was no proof of the value at the time of the marriage to compare to the value at the time of the divorce. The court was willing to consider Wife's argument that the home increased in value by the amount spent on it, but found that Wife did not substantially contribute to the increase. Rather, as the court found, the home increased in value only because Husband's sister made the money available to fund the addition. The court also found that funds in the construction account did not belong to either party but were in fact owned by Husband's sister.

The court found that the Duncan Trail property was not the property of either spouse. The court specifically stated that it was not convinced that Husband somehow used his daughter Tina as a shelter against a finding that he had acquired marital property. However, the court did find that the 2006 Ford pickup was marital property and awarded Wife one-half the value of the pickup, which total value the court placed at $20,000. The court also found that the lot next to the marital home was marital property. It considered the conflicting testimony and credited Husband's testimony regarding the purchase price over Wife's because his testimony was corroborated by the deed. The court valued the lot at $5,000.

## D.

After failing to achieve her desired property distribution at trial, Wife hired new counsel who filed a timely "Motion for New Trial and/or Reconsideration." As stated in Wife's brief, the motion asserted the following six grounds:

-4-

[T]he Trial Court awarded the funds deposited into the parties' joint checking account to [Husband's] sister even though she was a non-party and had not made a claim for the money;

[T]he Trial Court divested [Wife] of her interest in the Watson Fence Company without determining the commercial value of the business;

[T]hat the Trial Court erred in finding that improvements to the marital residence resulted solely from the contributions of [Husband's] sister and, therefore, that [Wife] had no equitable interest therein;

[T]hat the Trial Court awarded [Husband's] sister an interest in the marital residence;

[T]hat [Husband] testified falsely that he purchased the Bailey Lane property for $2,800 when, in fact, he paid $10,000 for the property; and

[T]hat the Trial Court should make Tina Watson and Chad Yeary parties in order to determine ownership and value of the Duncan Trail property.

(Paragraph numbering omitted.)

While the motion for new trial was pending, Wife filed a motion requesting that, pursuant to Tenn. R. Civ. P. 60.02 (1), (2), and (5), the court "set aside the Judgment of Divorce and conduct a new trial for determination of the value of the marital estate and distribution of the assets between the parties." Wife filed four affidavits in support of her second motion, the pertinent contents of which we will summarize.

Wife's son, Chad Yeary, signed an affidavit which essentially repeated his trial testimony. He added to that earlier testimony that Tina Watson took title to the Duncan Trail property approximately two months before the divorce trial and had never made a claim or demand for possession against him. Chad Yeary's father-in-law, Hugh Singleton, signed an affidavit which stated that Husband had told him that he, Husband, bought the property as a wedding gift for Chad.

Wife's affidavit repeated much of her trial testimony and also expanded on some of that testimony. She stated that the Duncan Trail property was paid for from marital assets and then recorded in Tina's name to diminish the marital estate. A copy of the deed from Robert and Eula Simmons to Tina Watson was attached to Wife's affidavit. Her affidavit added that, consistent with Husband's testimony at trial and contrary to the findings of the court, the marital home was encumbered by a mortgage at the time of the marriage and that approximately $7,000 to $8,000 was owing at the time of the marriage. A copy of a deed recorded December 18, 2006, releasing a deed of trust on the marital home was made an attachment. Wife attached to her affidavit a series of cancelled checks and statements on the joint account used to fund the addition which she asserted proved (1) that Wife contributed to the increase in value by her efforts of picking out materials as shown by checks she signed for those materials, (2) that the $80,000 check from Husband's sister could not have been the initial funding of the account because the account pre-dated the check by several months, (3) that Husband used the account for purchases other than the addition, and (4) that Husband closed the account and transferred the funds to a new account opened in his name and the name of his daughter. Wife attached a copy of a deposit in the amount of $20,557.11 into the new "Watson Building Account."

Wife's new counsel, Johnny V. Dunaway, also signed an affidavit. Dunaway's affidavit can be characterized as a document pointing out parts of the record that support Wife's post-trial motions.

E.

In denying Wife's motions, the court stated that even with the presentation of "stuff that I was not aware of at trial, . . . to say that there was a fraud perpetrated on the Court at this time, it would seem to me to be a leap." With regard to the Duncan Trail property, the court noted that, as represented to the court by counsel, Wife's "son's filed a separate suit in reference to that issue." Ultimately the court concluded that "for me to go unring a bell under the facts and circumstances that have been presented here today, I don't think I can." The court entered an order denying both of Wife's post-trial motions. Wife filed a timely notice of appeal.

II.

Wife raises the following issues which we have quoted verbatim from her brief:

Did the trial court err in denying [Wife's] motion for new trial and/or reconsideration?

Did the trial court err in denying [Wife's] Rule 60 motion?

Did the trial court err in divesting [Wife] of any interest in the funds in the parties' joint checking account and any interest in the marital residence, while vesting the joint checking account funds and an interest in the marital residence in a third party, Cecil Groves, who is neither a party to, a witness for, nor a claimant in the divorce litigation?

Did the trial court err in failing to declare a transmutation of the marital residence?

III.

Wife labeled her second motion as a Tenn. R. Civ. P. 60.02 motion. Such a motion is designed to relieve a party from a "*final* judgment, order or proceeding." (Emphasis added.) When the second motion was filed, the trial court's judgment was not "final" since Wife's Tenn. R. Civ. P. 59 motion was still pending. We elect to treat Wife's second motion as an amendment to her Rule 59 motion. We construe a person's motion according to its substance and not its label. *See Bemis Co., Inc. v. Hines*, 585 S.W.2d 574, 576 (Tenn. 1979). A trial court's ruling on a motion for new trial or to alter or amend a judgment is reviewed for an abuse of discretion standard. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003).

The general standard for reviewing a division of marital property was well-stated in *Blevins v. Blevins*, No. M2002-02583-COA-R3-CV, 2003 WL 23094162 (Tenn. Ct. App. M.S., Dec. 30, 2003):

> An appellate court's review of a trial court's findings of fact is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Unless there is an error of law, we must affirm the trial court's decision as long as the evidence does not preponderate against the findings. Where the trial court does not make findings of fact, we must conduct our own independent review of the record to determine where the preponderance of the evidence lies. Questions of law are reviewed *de novo* with no presumption of correctness.

Trial courts are afforded wide discretion in dividing the interests of parties in jointly owned property. Accordingly, the trial court's distribution will be given great weight on appeal, and will be presumed to be correct unless we find the preponderance of the evidence is otherwise. The appellate courts of this state are inclined not to disturb a trial court's division of marital property unless they find that the distribution lacked proper evidentiary support or results from either an error of law or a misapplication of the statutory requirements.

*Id*. at *2. (Citations and quotation marks in original omitted.)

IV.

Wife acknowledges that if she is entitled to any relief pursuant to Tenn. R. Civ. P. 59, it is pursuant to part 59.04 which provides for motions to alter or amend a judgment.[1] She is correct that her motion for "reconsideration" may be treated as a motion to alter or amend. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 794 n.3 (Tenn. Ct. App. 1997). Wife argues that the motion to alter or amend should have been granted "to prevent manifest injustice." *See Derryberry v. Derryberry*, No. 03A01-9801-CV-00023, 1999 WL 486863 at*5 (Tenn. Ct. App. E.S., filed July 13, 1999). Wife acknowledges that the function of a motion to alter or amend is not to relitigate issues or raise new arguments. *See In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). She also acknowledges in her lead brief [2] that "[a] trial court may . . . modify a judgment on the basis of newly discovered evidence, but only if the evidence was not known at or during the trial and the evidence could not have been discovered through the exercise of reasonable diligence. *See, e.g., Leek v. Powell*, 884 S.W. 2d 118 (Tenn. Ct. App. 1994)."

---

[1]Tenn. R. Civ. P. 59.04 states:

A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment.

[2]Wife seems to dispute in her reply brief the very proposition that she stated in her lead brief. We do not think that this is a proper function of a reply brief. We will therefore examine the appeal in the context of the arguments made in Wife's lead brief. We are aware of the Supreme Court's discussion of the "newly discovered evidence" criterion in *Harris v. Chern*, 33 S.W.3d 741, 743 (Tenn. 2000). Our analysis in this case is not inconsistent with *Harris v. Chern*.

As best as we can decipher Wife's arguments, she limits her manifest injustice argument to the construction account and the marital residence. We will examine each in turn.

With regard to the joint checking account, Wife argues that "[d]ivesting [Wife] of her share of the joint checking account is a manifest injustice that the Trial Court should have rectified by granting [Wife's] motion." Her argument is based solely upon two "new" propositions of fact put to the trial court by the motion and the later-filed affidavits. One is that, contrary to Husband's testimony at trial that the money in the joint account belonged to his sister, "the money had actually been on deposit in [Husband's] joint account with his daughter for almost two years." The other is that "the $80,000 check from [Husband's] sister that he testified at trial was used to establish the parties joint checking account was . . . deposited into the account on November 21, 2005 [, b]ut [Wife] presented proof at the post-trial motion hearing that the account had been in existence since at least May 16, 2005 and that the parties had spent thousands of dollars in renovating the marital residence before receiving the 'founding check' from [Husband's] sister."

There are a number of reasons we cannot concur in Wife's arguments. First, the evidence is not especially new. Wife testified at the trial that Husband had moved the money from the joint checking account. The only thing new is the exact identity of the new account. With regard to the $80,000 "founding check," Wife's position at trial was that more than $80,000 – more like $100,000 – was spent on the addition. Thus, it could have been no surprise to her that there were other checks deposited to the account as described at trial. At most, the "new" part was that Husband was wrong about the timing of the "initial" or "founding" check. Second, there was absolutely no showing at the motion hearing and almost no reason of which we can conceive that this "['new'] evidence was not known at or during the trial and the evidence could not have been discovered through the exercise of reasonable diligence." Third, we do not see how, even if there were some other source of funds, this fact alone could demonstrate a "manifest injustice" to Wife, since she readily admitted that she did not put any of her money into the account. Wife testified that she deposited her earnings into a separate account from which she paid her own bills. Finally, even if we had some degree of discomfort with the trial court's denial of the motion with regard to the joint account, which we do not, we would not be at liberty to simply substitute our judgment for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). We must recognize that the trial court was in a better position than this Court to determine whether relief from the judgment is needed for justice to have been done. *Id*.

With regard to the marital residence, Wife's position is that she "is entitled to either a share of the total value of the marital residence under the doctrine of transmutation, or a share of the increase in value of the marital residence during the marriage due to her

contribution to said increase." Wife argues that "divesting her of any interest in the marital residence is a manifest injustice justifying relief under Rule 59.04." Wife acknowledges that she "did not contribute monetarily towards the renovation of the marital residence," but argues that she substantially contributed to the increase in value of the marital residence by her "sweat equity." *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(2010). This allegedly consisted of carrying blocks and picking out wallpaper and similar items. Whether a spouse has substantially contributed to the preservation or appreciation of property is a fact question. ***Keyt v. Keyt***, 244 S.W.3d 321, 329 (Tenn. 2007). The contribution must be "real and significant" and a "link" must be demonstrated between the spouse's contribution and the increase in value. *Id*. It is sufficient in this case for us to say that we have reviewed the record and determined that even with the "new" evidence submitted in support of the post-trial motions, the evidence does not preponderate against the trial court's refusal to find that Wife substantially contributed to an increase in the value of the marital residence. It follows that no "manifest injustice" existed to be corrected.

Wife's argument that the residence transmuted from Husband's separate property to marital property is based upon her application of the factors identified in ***Fox v. Fox***, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 (Tenn. Ct. App. M.S., filed Sept. 1, 2006):

> Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.

*Id*. at \*5. Whether or not transmutation has occurred is a fact question. *Id*. at \*3 (classification questions are factual). Wife concedes that factors number 3 and 4 do not apply. It is true that the parties used the property as a marital residence, but the "residence should not be classified as marital property simply because the parties have lived in it." *Id*. at 5. Thus, the strength or weakness of Wife's argument depends on the amount of joint maintenance and management. While Wife's testimony, if accepted in its entirety, would demonstrate some efforts toward the addition, they do not rise to the level one would expect from a joint owner of a major addition. She apparently did not even know whether or not a mortgage existed until the small indebtedness was completely paid. She used her own earnings for her own bills and was content to allow the addition to be funded from another source. At most, she picked out some colors and materials and wrote the check to pay for the materials from an account that she knew she did not fund. In short, the evidence, even as supplemented by post-trial motions and affidavits, does not preponderate against the trial

-10-

court's treatment of the marital residence as Husband's separate property. Accordingly, there is no manifest injustice and no error in the trial court's denial of Wife's Rule 59 motion.

We will now address Wife's arguments concerning her second motion. Many of the same considerations that we have discussed apply to this motion, since it is based upon the same "new" evidence submitted by affidavit. We will not repeat our previous analysis.

Wife argues that her previous counsel was guilty of neglect which justifies relief. She points to counsel's failure to take economic discovery, his failure to present evidence of the value of the marital residence at the time of the marriage, and his failure to present evidence of the value of the fence business at the time of the marriage and at the end of the marriage. We think it significant that Wife's present counsel, who is charged with arguing neglect, submitted his own affidavit in support of the second motion and said absolutely nothing about neglect on the part of previous counsel. Even if we look beyond the terminology, and ignore whether the affidavit speaks of "neglect" or "mistake," there is no mention in present counsel's affidavit of what previous counsel failed to do or should have done. Thus, Wife did not even make a prima facie case of neglect versus deliberate choice in the handling of the trial. We have previously noted that most of the "new" evidence is not new substance. Given the short duration of the marriage and Wife's practice of depositing her earnings into her account to pay her "own" bills, there is every reason to believe that prior counsel, and Wife for that matter, decided less is more, thinking that the trial court would likely try to put the parties in the same position they were in before the marriage and much as they conducted themselves during the marriage. Wife acknowledges in her reply brief that Husband "correctly states that in cases involving marriages of relatively short durations, the trial court should place the parties as nearly as possible to the position they were in prior to the marriage." *See* **Broadbent v. Broadbent**, 211 S.W.3d 216, 222 (Tenn. 2006), *reh'ng granted* (Nov. 14, 2006). We cannot divine the thinking of trial counsel or the trial court. We can, however, state with confidence that the trial court did not abuse its discretion in finding that Wife did not make a showing of mistake or neglect.

Wife further argues that she is entitled to relief because Husband is guilty of "an intentional contrivance . . . to keep [Wife] and the Court in ignorance of the real facts." Her basis is Husband's testimony that his sister provided the funds for the initial deposit into the joint construction account and his testimony that the F150 pickup truck belonged to his daughter. As to the truck, the court determined the matter in favor of Wife. Therefore, if there was a contrivance, it did not work. As to the deposit, it was accepted at trial that there was more than one deposit, and, as we have previously stated, Wife argued that $100,000 was spent on the house from funds she did not supply. She was authorized to sign checks on the construction account and appears to have had full access to the banking records so as to be aware of all deposits and withdrawals. The fact that she introduced no specific proof

at trial of the number and source of deposits speaks volumes. The same is true even with regard to the banking records she submitted in support of her motion. Wife acknowledges that to succeed on her fraud theory she must offer clear and convincing evidence of fraud. *See **Duncan v. Duncan***, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990). The trial court specifically noted that it could not comfortably conclude that Husband had committed a fraud on the court. The record fully supports the trial court's conclusion. We hold, therefore, that the trial court did not abuse its discretion in refusing to overturn the judgment for fraud.

Wife argues that she should be granted relief pursuant to the "catch-all" provision of "any other reason justifying relief" in Tenn. R. Civ. P. 60.02(5). As we have earlier noted, Rule 60.02 is not applicable to this case; but even if it were, it is clear that the broad language of subsection (5) is not implicated by the facts of this case, that subsection having been narrowly construed by the courts. ***Federated Ins. v. Lethcoe***, 18 S.W.3d 621, 625 (Tenn. 2000); ***Duncan***, 789 S.W.2d at 564. In application, the standard for relief under 60.02(5) is "more demanding than those applicable to the other grounds for Tenn. R. Civ. P. 60.02 relief." ***Id***. "Relief under Rule 60.02(5) is only appropriate in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship." ***Lethcoe***, 18 S.W.3d at 624. Having considered all of Wife's arguments with respect to her second motion, we hold that the trial court did not abuse its discretion in denying that motion.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to appellant, Sherry Watson. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE