IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 28, 2012 Session

## LORI ANN BATES v. STEPHEN LEE BATES

**Appeal from the Chancery Court for Lewis County**
**No. 2009CV317    Timothy L. Easter, Chancellor**

—————————————

**No. M2010-02590-COA-R3-CV - Filed June 26, 2012**

—————————————

In this divorce proceeding, Husband appeals the trial court's classification and division of marital property. Wife appeals the trial court's ruling regarding the admissibility of certain expert testimony and the grant of Husband's Tenn. R. Civ. P. 60.02 motion to vacate the award of alimony. Finding no error, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the Appellant, Stephen Lee Bates.

Jennifer Fleming Franks, Columbia, Tennessee, for the Appellee, Lori Ann Bates.

### OPINION

Stephen Bates ("Husband") and Lori Bates ("Wife") were married on August 2, 2002; one child was born of the marriage.[1] Throughout their marriage, Husband and Wife resided at 740 Cane Creek Road in Hohenwald, Tennessee, a home Husband owned prior to the marriage. In 2003, Husband started his own business, Guardian Advisors LLC, and worked as a self-employed municipal advisor. In 2007, after taking night classes at Middle Tennessee State University for eight years, Wife earned her college degree and began teaching kindergarten. Also in 2007, Husband purchased a second home located at 170 Patton Road in Hohenwald.

On December 16, 2009, Wife filed for divorce, alleging inappropriate marital conduct and irreconcilable differences. Husband answered and counter-claimed for divorce. Wife

———————————————

[1] Wife has two other minor children from a previous marriage.

resided at the Patton Road residence while the divorce was pending. Prior to trial, the parties engaged in mediation and settled all issues related to their minor child. The case proceeded to trial on September 16 and 17, 2010 at which the parties stipulated grounds for divorce; the trial addressed issues relating to the division of marital property, alimony, and attorney's fees.

On October 21, 2010, the trial court filed extensive Findings of Fact and Conclusions of Law, and on November 18, 2010, the court entered the Final Decree of Divorce. The court classified the Cane Creek Road and Patton Road residences as marital property and awarded the Cane Creek Road residence to Husband and the Patton Road residence to Wife. The court held that Wife "is the economically disadvantaged spouse and in need of rehabilitative alimony to allow her to acquire additional education or training so as to allow her to reach an appropriate standard of living as compared to the standard of living enjoyed during the marriage" and ordered Husband to pay $500.00 per month as rehabilitative alimony for 30 months. In addition, the court awarded Wife $7,500.00 in attorney's fees which it classified as alimony *in solido*.

Husband filed a notice of appeal on December 1, 2010. Subsequently, Husband filed a Tenn. R. Civ. P. 60.02 motion in the trial court. On July 27, 2011, this Court entered an order remanding the case for the trial court to assess the merits of Husband's motion.[2]

In his Rule 60.02 motion, Husband requested the court to relieve him from any obligation to pay alimony, alleging that Wife had access to and the ability to use $200,000 in accounts that she previously testified were in her name solely for her parents' "estate planning purposes." The court held a hearing on September 9, 2011, and entered an order on September 21 finding that:

> Wife's use of the accounts on which she was listed with her parents was different than her testimony at trial. . . . The court finds that the inconsistency was a misrepresentation such that it does give rise to a second look at the alimony issue.

The court "vacated" Husband's responsibility to pay Wife rehabilitative alimony and ordered Wife to reimburse Husband for the alimony payments he paid while the motion was pending.

---

[2] Husband filed a series of briefs with this Court, the first of which was filed on April 25, 2011. Also on April 25, 2011, Husband filed a Tenn. R. App. P. 14 Motion to Consider Post Judgment Facts, which this Court denied. On April 29, 2011, Wife moved this Court to require Husband to file an amended brief removing all references to certain post-judgment facts. On May 11, 2011, this Court granted Wife's motion, and Husband filed an amended brief on May 26, 2011. On June 16, 2011, Husband filed a second amended brief to "avoid any discrepancies between what Appellee's Counsel and this Court previously received."

Wife thereafter filed a notice of appeal and on October 18, 2011, this court entered an order consolidating the parties' appeals.

## STANDARD OF REVIEW

Because this case was tried without a jury, our review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13(d). Our review of a trial court's conclusions of law is *de novo* upon the record with no presumption of correctness. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

## ANALYSIS

Husband appeals the trial court's classification and distribution of property. Wife argues that the trial court erred in vacating the award of alimony by granting Husband's Tenn. R. Civ. P. 60.02 motion and that the trial court erred in allowing an affiliate real estate broker to testify as to the value of certain property. We consider the issues in turn.

### CLASSIFICATION OF PROPERTY

Husband asserts that the trial court erred in holding that the Cane Creek Road residence was marital property.

Tennessee statutes draw a distinction between "marital property" and "separate property."[3] Tenn. Code Ann. § 36-4-121. "Marital property" must be divided equitably

---

[3] Tenn. Code Ann. § 36-4-121(b)(1) defines "marital property" in relevant part, as follows:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .

Tenn. Code Ann. § 36-4-121(b)(2) defines "separate property" as:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, compiled in 26 U.S.C., as amended;

(continued...)

between the parties, however "separate property" is not subject to division. Tenn. Code Ann. § 36-4-121(a)(1). The doctrines of transmutation and commingling provide an avenue whereby separate property can become marital property. *See Eldridge v. Eldridge*, 137 S.W.3d 1, 13–14 (Tenn. Ct. App. 2002); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). This Court has previously defined these concepts as follows:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (citations omitted). The classification of property as either separate or marital is a question of fact for the trial court. *Bower v. Bower*, No. E2011-00978-COA-R3-CV, 2012 WL 1752401, at *7 (citing *Mitts v. Mitts*, 39 S.W.3d 142, 144–45 (Tenn. Ct. App. 2000)).

We have reviewed the evidence regarding the Cane Creek Road residence and determine that the trial court erred in classifying this residence as marital property; however,

---

[3](...continued)

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

(E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

(F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

the error was harmless because, even without the value of that residence included in the marital estate, the overall division of the parties' property was equitable.

When reviewing the factors of Tenn. Code Ann. § 36-4-121(c) regarding classification of marital property, the trial court stated as follows:

> Both parties leave this marriage with sufficient separate property. Additionally, although the Court classifies the Cane Creek property as marital, it is separate property that Husband owned before the marriage. However, this asset has depreciated in value leaving no appreciation for the parties to enjoy. There is non-the-less equity that will be attributed to Husband.

The trial court did not make a finding that the property had been converted to marital property through transmutation or commingling.

Husband testified that the Cane Creek Road residence was valued at $175,000 at the time of the marriage. The trial court found that, by the time of divorce, the residence had depreciated and was valued at $144,500, a value testified to by Husband's expert witness. Thus, there was no "increase in value" to assign as marital property in accordance with the applicable statute. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A) ("'Marital property' includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . .").

Moreover, we do not find that the Cane Creek Road residence was transmuted into marital property. We have not been cited to any evidence to support such a finding; to the contrary, Wife testified that the parties maintained separate checking accounts during the marriage, that Husband paid for the mortgage on the residence from his separate account, and that he never added Wife's name to the deed on the residence. This evidence does not support a finding that the parties intended the Cane Creek Road residence to constitute martial property. *Langschmidt*, 81 S.W.3d at 747 ("[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . .").

The trial court's error in classifying the property as marital, however, is harmless. The court valued the entire marital estate at $520,393.86 and distributed $155,038.86 to Wife and $365,355.00 to Husband. The court found that the separate property of the parties totaled $120,082.00, with the value of Wife's property to be $97,305.00 and Husband's $22,777.00; adding the value of this residence to the value of Husband's separate property would equal $167,277.00 and the distribution of the marital estate would be $220,855 to Husband and $155,038.86 to Wife. Thus, Husband would suffer no loss and the error in classifying the

property as marital is harmless. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

## DIVISION OF MARITAL PROPERTY

The crux of Husband's argument centers around his belief that *Batson v. Batson* controls the property division in this case. Specifically, Husband argues that the trial court erred when it did not put the parties in the "same position they would have been in had the marriage never taken place." *Batson*, 769 S.W.2d at 859. We do not find *Batson* controlling of the outcome of this case as Husband urges.

*Batson* was a divorce case involving parties who were married a little more than five years prior to their separation. In discussing the division of marital property we noted:

> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859. In determining that the marital property need not be divided equally but, rather, that the parties should be restored to their "pre-marriage financial condition," we took into account a number of specific considerations in addition to the length of the marriage. We considered the fact that husband's net worth was over ten times that of his wife and his annual income was nine times larger than wife's at the time of their marriage; that the parties supported themselves during the marriage primarily on husband's income; that a large part of the marital property consisted of the increase in value of husband's retirement accounts, which would be diminished if liquidated; and that the wife's non-monetary contributions were best considered as part of the award of separate maintenance and support. *Id*.

Husband's reliance on *Batson* stems primarily from his contention that the marriage in this case was of "short duration." Although the duration of the marriage is listed as the first factor in Tenn. Code Ann. § 36-4-121(c), "this should not interpreted to mean that this factor should always carry more weight than the others. The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case." *Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003). Here, the parties were married over seven years when they were separated and they had one child together during their marriage; the trial court determined that the marriage was of "mediocre" length. With

respect to the other factors at Tenn. Code Ann. § 36-4-121(c), the proof was that Husband's separate property—the Cane Creek Road residence that he brought into the marriage—did not increase in value during the marriage, a fact found by the court and acknowledged in Husband's brief. In addition, while Wife's income and net worth was less than Husband's at the time of the marriage, Wife earned her degree during the marriage and was able to support herself as a teacher.

Given our standard of review and the deference we afford to a trial court's decisions in dividing a marital estate, the evidence does not preponderate against the court's division of the marital estate.[4] The trial court appropriately weighed the factors at Tenn. Code Ann. § 36-4-121(c) and, in light of the entire record, it would not be equitable to place the parties in the same position they would have been in had the marriage never taken place. We affirm the trial court's distribution of marital assets.

ALIMONY

Wife contends the trial court erred in granting Husband's Tenn. R. Civ. P. 60.02 motion and vacating the award of rehabilitative alimony to Wife.

Tenn. R. Civ. P. 60.02 provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02. As our Supreme Court has explained, Tenn. R. Civ. P. 60.02 provides "an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules."

---

[4] Trial courts are vested with a large measure of discretion when classifying and dividing the marital estate, thus their decisions are entitled to great weight on appeal. *Sullivan v. Sullivan*, 107 S.W.3d 507, 512 (Tenn. Ct. App. 2002) (citing *Goodman v. Goodman*, 8 S.W.3d 289, 298 (Tenn. Ct. App. 1999)). Accordingly, unless the court's decision is contrary to the preponderance of the evidence or based on an error of law, it will not be second-guessed on appeal. *Id.*

*Thompson Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). The rule "strikes a balance between the competing principles of finality and justice." *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005) (citing *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 18 (Tenn. 1991); *Rogers v. Estate of Russell*, 50 S.W.3d 441, 444 (Tenn. Ct. App. 2001)). The party seeking modification of a judgment under Tenn. R. Civ. P. 60.02 has the burden of proving that it is entitled to relief. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). Post-judgment relief pursuant to a Tenn. R. Civ. P. 60.02 motion is warranted when the moving party:

> proves with clear and convincing evidence the existence of conduct amounting to an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in the litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.

*Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (citing *Leeson v. Chernau*, 734 S.W.2d 634, 638 (Tenn. Ct. App. 1987)). We review a trial court's decision to grant or deny a Tenn. R. Civ. P. 60.02 motion under the abuse of discretion standard. *DeLong*, 186 S.W.3d at 511 (citing *Federated Ins. Co.*, 18 S.W.3d at 624; *Beason v. Beason*, 120 S.W.3d 833, 839 (Tenn. Ct. App. 2003)).

In the Final Decree of Divorce, the trial court awarded Wife $500.00 per month in rehabilitative alimony for thirty months. In support of its determination that Wife should receive alimony, the trial court reviewed the factors at Tenn. Code Ann. § 36-5-121(i)[5] and specifically considered the parties' separate and marital property, finding as follows:

> **7. The separate assets of each party, both real and personal, tangible and intangible.** Wife leaves the marriage with more separate property than Husband. However Husband leaves the marriage with more assets than Wife. This factor is therefore neutral.
>
> **8. The provisions made with regard to the marital property, as defined in T.C.A. § 36-4-121.** With the division of property that the Court has adopted, Husband leaves the marriage with substantially more assets than Wife. This factor favors an award of alimony.

---

[5] In considering an award of alimony, the trial court is to consider a number of factors listed at Tenn. Code Ann. § 36-5-121(i) including "[t]he separate assets of each party, both real and personal, tangible and intangible," and "[t]he provisions made with regard to the marital property, as defined in § 36-4-121." Tenn. Code Ann. § 36-5-121(i)(7).

Subsequently, Husband filed a Tenn. R. Civ. P. 60.02 motion requesting the Court to relieve him from his alimony obligation to Wife. Specifically, Husband alleged that Wife had liquidated certain accounts she previously testified were for her parents' "estate planning purposes only."[6] Attached to his motion was the deposition testimony of Wife[7] in which she stated that she "borrowed" $100,000 from the accounts she previously testified she would "never use" to purchase a new home. In her deposition, she testified that she did not execute

---

[6] At trial, Wife testified that her mother added her as an owner of her parents' accounts when her brother passed away in 2008. Wife's testimony on direct examination regarding these accounts is as follows:

> Q: Until this divorce proceeding and we had the depositions in August, did you know that you were owners and could withdraw money from these accounts?
> A: I only knew - - no- - that I was put on the accounts for the reason that I state. I never had a checking account - - I never had checks or access to it, to my knowledge
> . . .
> Q: Did you ever go to the bank and withdraw any money out of any of these accounts?
> A: No, ma'am.
> Q: Did you ever write a check, even for the benefit of your mom, on these accounts?
> A: No, ma'am.
> Q: Do you intend to ever remove money, either by writing a check or cashing out a CD, from any of these accounts?
> A: No, ma'am.
> Q: Do you consider this money to actually be your money?
> A: No, it is not my money; it is my parents' money.

On cross-examination, Wife testified further regarding the accounts and stated:

> Q: On all of these financial accounts, you do not dispute what's been handed to you in Exhibit 2. You do not dispute the value of these accounts?
> . . .
> A: No, I do not.
> Q: Nor do you dispute that if you have an ownership in this, you can take a check out and sign for it and it would pass at any bank institute in America.
> A: If I had a check.
> Q: If you had a check. You could go to the bank and ask for a checking book, can't you, because you're owner of that account.
> A: I could, but I would never do that.
> Q: But you could. You could liquidate a CD, right? You could liquidate a CD worth over a hundred thousand dollars. You could liquidate that, couldn't you?
> A: I could, but I would never do that. That's not mine.
> Q: But you could. If you had a need, would you?
> A: Absolutely not; that is not mine.
> Q: If you have a dire need, you wouldn't liquidate that money?
> A: I would never go and take money from my parents' accounts.

[7] The deposition was taken on December 20, 2010.

any loan paperwork in connection with her borrowing the money from her parents, and her parents were not charging any interest on the "loan."

In granting Husband's Rule 60.02 motion, the trial court reasoned as follows:

4. The Court finds that the Wife's use of the accounts on which she was listed with her parents was different than her testimony at trial. Indeed her actions were different that what the Wife's Mother testified to at trial as well. The Court finds that the inconsistency was a misrepresentation such that it does give rise to a second look at the alimony issue.

5. The Court finds that if it had known in September of 2010 that the Wife could have used these funds in the manner that she did in November of 2010, that it would not have ordered alimony in this matter to rehabilitate Mrs. Bates. The Court ordered alimony in September of 2010 based on the testimony that Mrs. Bates intended to obtain post graduate education. The Court weighed most heavily T.C.A. 36-5-121(i) two, eight and nine, and with the information now obtained, the Court realizes that it would not have found rehabilitative alimony proper.

6. The Court finds that the award of alimony *in solido* to Mrs. Bates in the form of attorney's fees should not be reversed based upon this "second look" at alimony.

We have reviewed the record and hold that the trial court did not abuse its discretion in granting the motion and vacating the award of rehabilitative alimony. Although all relevant factors in Tenn. Code Ann. § 36-5-121(i) must be considered, the two most important factors a court must consider in making an alimony determination are the disadvantaged spouse's need and the obligor spouse's ability to pay. *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 110 (Tenn. 2011). Wife misrepresented her intentions regarding her parents' accounts, thus the court did not have an accurate understanding of her need for alimony. Wife's trial testimony was "an intentional contrivance" which kept the court and Husband in ignorance of her true financial situation. *See Duncan*, 789 S.W.2d at 563. The trial court was within its discretion in granting the Tenn. R. Civ. P. 60.02 motion. We affirm the ruling vacating the award of rehabilitative alimony to Wife.

TESTIMONY REGARDING VALUE OF REAL PROPERTY

Wife contends the trial court erred in allowing Robert Sullivan, an affiliate real estate broker, to testify as an expert regarding the value of the Cane Creek and the Patton Road

residences. In support of her argument, Wife relies on Tenn. Code Ann. § 62-39-335,[8] Tenn. Code Ann. § 62-39-103,[9] and *Tenn. Dep't of Transp. v. Wheeler*, No. M1999-00088-COA-R3-CV, 2002 WL31302889 (Tenn. Ct. App. Oct. 11, 2002) and asserts that these authorities prohibit an affiliate broker from giving an expert opinion as to the value of land. We do not agree that either the statues or case relied upon by Wife render Mr. Sullivan's testimony inadmissible.

*Wheeler* involved a condemnation proceeding in which this Court considered whether an unlicensed real estate broker was qualified to give an expert opinion regarding the value of real property that was taken by the Tennessee Department of Transportation. The Department argued that Tenn. Code Ann. §62-39-103 permitted only certified real estate appraisers and licensed real estate brokers to appraise the value of real property in Tennessee, subject only to Tenn. Code Ann. §62-39-335. This Court agreed and held:

> [P]ersons seeking to give an expert opinion regarding the value of real property located in Tennessee must meet both the specific statutory requirements of Tenn. Code Ann. § 62-39-103(a) and the general requirements of Tenn. R. Evid. 702 at the time they are called upon to testify regarding their expert opinion.

Wife urges this Court to extend the holding in *Wheeler* to domestic relations cases. Contrary to the holding implicit in *Wheeler*, however, we do not read or apply Tenn. Code Ann. § 62-39-103 as prohibiting someone other than a licensed appraiser or real estate broker from giving an opinion of value of real property in all circumstances.

Our analysis of this issue requires us to construe the statutes cited by Wife and relied on in *Wheeler*. The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc., v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). To determine legislative intent, one must look to the natural and ordinary meaning of the language used in the statute itself. We must examine any provision

---

[8] Tenn. Code Ann. § 62-39-335 states:

This chapter shall not act or be construed to prohibit a real estate broker licensed under chapter 13 of this title from testifying as to the value of property in court cases as an expert witness and receiving a fee for the testimony subject to review by the court.

[9] Tenn. Code Ann. § 62-39-103(a) states:

Except as provided in § 62-39-104, it is unlawful for anyone to solicit an appraisal assignment or to prepare an appraisal or an appraisal report relating to real estate or real property in this state without first obtaining a real estate appraiser's license or certificate.

within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). When construing statutes that are part of a statutory scheme, we are directed to look to the context of the particular provision. Our Supreme Court has made the following observation:

> When statutory provisions are, as in this case, enacted as part of a larger Act, 'we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof. Where different sections are apparently in conflict we must harmonize them, if practicable, and lean in favor of a construction which will render every word operative.'

*Hill v. City of Germantown*, 31S.W.3d 234, 238 (Tenn. 2000) (quoting *Bible & Godwin Constr. Co. v. Faener Corp.*, 504 S.W.2d 370, 371 (Tenn. 1974)).

The statutes cited by Wife are contained within the section of our code which, *inter alia*, creates the Real Estate Appraiser Commission, sets forth the license and certification requirements for real estate appraisers, and establishes standards for appraisals. The intent of Chapter 39 is stated at Tenn. Code Ann. § 62-39-329 as follows:

> It is the intent of this chapter that real estate appraisals be performed in accordance with generally accepted appraisal standards; therefore, state licensed and/or certified real estate appraisers must comply with the Uniform Standards of Professional Appraisal Practice promulgated by the appraisal standards board of the appraisal foundation and any other duly established standards of the commission. The commission shall not establish any criteria for licensure that are more stringent than the criteria established by the federal appraiser qualification board.

In furtherance of that intent, Tenn. Code Ann. § 62-39-105 provides:

> (a) No person other than a state certified real estate appraiser under this chapter shall assume or use that title or any title, designation or abbreviation likely to create the impression of certification as a real estate appraiser by this state.
> (b)(1) Only an individual who has qualified as a state certified real estate appraiser under this chapter is authorized to prepare and sign a certified appraisal report relating to real estate or real property in this state.
> (2) If an appraisal report is prepared and signed by a state certified real estate

appraiser and the appraisal report is certified as such by the state certified real estate appraiser, a holder of a real estate appraiser license or a certificate of registration as a real estate appraiser trainee who assisted in the preparation of the appraisal report is authorized to co-sign the appraisal report.

(3) An individual who has not qualified as a state certified real estate appraiser shall not describe nor refer to any appraisal or appraisal report relating to real estate or real property in this state by the terms "certified appraisal" or "certified appraisal report."

Considering each of these statutes in the context of the statutory scheme, we conclude that Tenn. Code Ann. § 62-39-103(a) does not prohibit a witness from testifying to the value of real property where such an opinion of value, rather than the appraised value of property as directed by Tenn. Code Ann. § 29-17-1004,[10] is sought; moreover, nothing in the statute prohibits an affiliate real estate broker from offering opinion testimony of value of real property in a domestic relations case. We affirm the trial court's admission of Mr. Sullivan's testimony.

We next consider whether Tenn. R. Evid. 702 and 703 prohibit Mr. Sullivan from testifying as to value in this case. The trial court functions as a gatekeeper with regard to the admissibility of expert testimony and assures "1) that the expert's testimony is based on the same intellectual rigor that is expected of persons engaged in the relevant field of endeavor [citations omitted] and 2) that the expert's testimony will substantially assist the trier of fact." *Johnson v. John Hancock Funds*, 217 S.W.3d 414, 425 (Tenn. Ct. App. 2006). Once admitted, the evidence will "be tested with the crucible of vigorous cross-examination and countervailing proof." *State v. Stevens*, 78 S.W.3d 817, 835 (Tenn. 2002) (citing *McDaniel*, 955 S.W.2d 257, 265 (Tenn. 1997)). "Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion, and the trial court's ruling admitting or excluding expert testimony may be overturned only if the court abused its discretion." *City of Pulaski v. Morris*, No. M2010-00047-COA-R3-CV, 2010 WL 3732161, at *3 (Tenn. Ct. App. Sept. 23, 2010) (citing *Brown*

---

[10] Tenn. Code Ann. § 29-17-1004 requires that an appraisal of property be taken in a condemnation proceeding proceeding. The statute further provides that:

> The appraisal shall value the property considering its highest and best use, its use at the time of the taking, and any other uses to which the property is legally adaptable at the time of the taking. Any appraiser making an appraisal must possess the designation Member of the Appraisal Institute (MAI), or be an otherwise licensed and qualified appraiser under title 62, chapter 39.

We note that the question of whether Tenn. Code Ann. § 62-39-103 applies to a proceeding other than a condemnation proceeding was not before the court in *Wheeler.*

*v. Crown Equipment Co.*, 181 S.W.3d 268, 275 (Tenn. 2005)). Furthermore, the weight to be given to an expert opinion and the resolution of legitimate, competing expert views are matters appropriately entrusted to the trier of fact. *Id.*

Mr. Sullivan testified that he had a twenty-nine year career in financial services and became a licensed affiliate real estate broker and affiliate appraiser after taking courses in 2005. He testified that he has listed and auctioned property in the area in which the parties' properties are located and that he had knowledge of agricultural, residential, and commercial property. Mr. Sullivan's testimony demonstrated that he had "specialized knowledge" that would "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. Moreover, Mr. Sullivan testified that he made his valuation of the properties on June 9, 2010. In contrast, Wife's expert made his valuations on April 20, 2010. These dates are significant because the area experienced severe flooding in May 2010 which impacted the marketability of the property. Mr. Sullivan was the only witness who testified regarding the effect of the flooding on the properties at issue. Accordingly, the trial court did not err in accepting Mr. Sullivan's testimony regarding the value of the parties' property.

## CONCLUSION

For the foregoing reasons, we affirm the trial court in all respects.

_____
RICHARD H. DINKINS, JUDGE