**Angelia Nicholson DUNCAN,
Plaintiff/Appellant,**

v.

**Joseph Frank DUNCAN, Sr.,
Defendant/Appellee.**

89–107–II.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 31, 1990.

Permission to Appeal Denied by
Supreme Court May 14, 1990.

John W. Nolan, III, Philip W. Duer, Nashville, for plaintiff, appellant.

Charles H. Warfield, James G. Martin, III, Farris, Warfield & Kanaday, Nashville, for defendant, appellee.

## OPINION

KOCH, Judge.

This appeal involves a wife's protracted efforts to obtain post-judgment relief from the valuation placed on her husband's business during divorce proceedings in the Circuit Court for Davidson County. Upon discovering that her husband sold his business shortly after the divorce for much more than it had been valued at trial, the wife filed a Tenn.R.Civ.P. 60 motion seeking to set aside the value originally placed on the business. The trial court denied the motion, and the wife has appealed to this court. We have determined that the wife has not made out a case for post-judgment relief and, therefore, affirm the dismissal of her motion.

## I.

Angelia Duncan and Joseph Duncan were married in January, 1951. They raised three children and worked hard during the marriage, Mrs. Duncan in her family's dry cleaning business and Mr. Duncan in a security and alarm business he started in 1966. They separated in August, 1981 after Mr. Duncan became romantically involved with another woman. Mrs. Duncan filed for divorce three months later.

The trial court heard the proof in May and July, 1982. One of the most hotly contested issues during the trial was the value of Mr. Duncan's interest in the security and alarm business. Mr. Duncan did not give an opinion concerning the value of his company; however, his accountants testified that his share of the business was worth between $250,000 and $400,000. Mrs. Duncan's accountant testified that Mr. Duncan's share was worth $1.25 million.

In September, 1982, the trial court granted Mrs. Duncan a divorce on the grounds of cruel and inhuman treatment. The court awarded Mrs. Duncan property worth more than $790,000 as her share of the marital estate and as alimony in solido. It awarded Mr. Duncan the remainder of the marital estate which the court valued at $675,000, including his interest in the alarm business which the trial court valued at $400,000. The trial court did not award Mrs. Duncan alimony in futuro or attorney's fees.

Mrs. Duncan perfected an appeal to this court. While the appeal was pending, Mr. Duncan and the co-owner of the alarm business sold the company for $5.5 million. Mr. Duncan received approximately $2.5 million for his share of the business—six

times more than the trial court's valuation of his interest. When Mrs. Duncan learned of the sale, she set in motion the legal proceedings that have taken the trial and the appellate courts the past six years to unravel.

Mrs. Duncan first filed a Tenn.R.App.P. 14 motion requesting this Court to consider the amount Mr. Duncan received from the sale of the business as a post-judgment fact. While retaining jurisdiction, this court remanded the case to the trial court "for the limited purpose of developing the facts in regard to an alleged sale by appellee of the Security Alarms and Services, Inc."[1] The Tennessee Supreme Court granted Mr. Duncan's application for a Tenn.R.App.P. 10 appeal in July, 1983.

In August, 1983 while Mr. Duncan's appeal was awaiting disposition by the Supreme Court, Mrs. Duncan requested the trial court to grant her post-judgment relief from the portion of the original divorce decree that valued Mr. Duncan's portion of the alarm company at $400,000. The trial court declined to consider the motion as long as Mr. Duncan's appeal was pending.

In June, 1984, the Supreme Court reversed this court, holding that the details of the company's sale were "wholly outside the scope of Rule 14." *Duncan v. Duncan*, 672 S.W.2d 765, 769 (Tenn.1984). Four months later, this court affirmed the trial court's decision with only minor modifications relating to several items of personal property. In doing so, we specifically affirmed the trial court's valuation of Mr. Duncan's interest in the alarm company based on the evidence introduced at trial. *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn.Ct.App.1984).

With this phase of the litigation at an end, Mrs. Duncan turned her attention to her motion for post-judgment relief that was still pending in the trial court. In June 1985, the trial court granted Mr. Dun-

can's motion to dismiss for failure to state a claim upon which relief could be granted. This court eventually reversed and remanded the case for a hearing on Mrs. Duncan's motion.[2] *Duncan v. Duncan*, App. No. 85–264–II 1986 WL 15666 (Tenn.Ct.App. Oct. 1, 1986). The Supreme Court concurred in the results, holding that a Tenn. R.Civ.P. 12.02 motion "is an inappropriate response to a Rule 60 motion." *Duncan v. Duncan*, Davidson Law (Tenn. Jan. 5, 1987).

The trial court finally conducted an evidentiary hearing in September, 1988 and, in December, 1988 entered a memorandum and order denying post-judgment relief. Mrs. Duncan has again appealed to this court.

## II.

We turn first to Mrs. Duncan's assertion that the trial court improperly restricted the scope of her discovery to support her Tenn.R.Civ.P. 60.02(2) motion. The discovery orders were premature and unduly restrictive. However, the defects in the orders do not require reversal because, as a practical matter, Mrs. Duncan obtained discovery from the persons who possessed the information relevant to her claims for post-judgment relief.

### A.

The Tennessee Rules of Civil Procedure embody a broad policy favoring the discovery of any relevant, non-privileged evidence. *See* Tenn.R.Civ.P. 26.02(1); *Vythoulkas v. Vanderbilt University*, 693 S.W.2d 350, 357 (Tenn.Ct.App.1985). Evidence need not be admissible to be discoverable. Thus, rather than undertaking the impossible task of defining all the circumstances that might require discovery to be limited, the rules leave it to the trial court's discretion to decide upon the discovery restrictions that might become nec-

---

**1.** *Duncan v. Duncan*, App. No. 82–377–11 (Tenn. Ct.App. July 9, 1983).

**2.** Another panel of this court initially dismissed Mrs. Duncan's appeal on October 29, 1985, because she had failed to file a timely notice pursuant to Tenn.R.App.P. 24(d) that no transcript would be filed. *Duncan v. Duncan*,

Davidson Circuit (Tenn.Ct.App. Oct. 29, 1985). However, the Supreme Court reversed, finding that the technical defect should have been waived because Mr. Duncan had not been prejudiced. *Duncan v. Duncan*, No. 86–7–1, 1986 WL 7020 (Tenn. June 23, 1986).

essary in a particular case. *Strickland v. Strickland,* 618 S.W.2d 496, 501 (Tenn.Ct. App.1981); 4 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 26.67 (2d ed. 1989); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2036 (1970).

■ However, a trial court's discovery decisions are not immune from appellate review simply because they are discretionary. In light of the rules' broad policy favoring discovery, the party opposing discovery must demonstrate with more than conclusory statements and generalizations that the discovery limitations being sought are necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Tenn. R.Civ.P. 26.03; *Loveall v. American Honda Motor Co.,* 694 S.W.2d 937, 939 (Tenn. 1985). A trial court should decline to limit discovery if the party seeking the limitations cannot produce specific facts to support its request.

■ A trial court should balance the competing interests and hardships involved when asked to limit discovery and should consider whether less burdensome means for acquiring the requested information are available. *Marrese v. American Academy of Orthopaedic Surgeons,* 706 F.2d 1488, 1493 (7th Cir.1983); *Newsom v. Breon Laboratories, Inc.,* 709 S.W.2d 559, 560 (Tenn. 1986). If the court decides to limit discovery, the reasonableness of its order will depend on the character of the information being sought, the issues involved, and the procedural posture of the case. *Price v. Mercury Supply Co.,* 682 S.W.2d 924, 935 (Tenn.Ct.App.1984); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2035 (1970).

### B.

Mrs. Duncan first sought discovery in 1983 when she filed her motion for post-judgment relief. However, she conducted no discovery for approximately four years because Mr. Duncan would not consent to it and because the trial court declined to require it while the underlying divorce case was on appeal. After this court ordered the trial court to hold a hearing, but before Mrs. Duncan could conduct any discovery, Mr. Duncan sought a protective order to limit or curtail discovery. Mr. Duncan's motion contained no specific facts, or even conclusory allegations, pointing to the need for a protective order at that time.

The trial court's April 6, 1987 memorandum not only limited the scope of discovery but also undertook to decide in advance what types of evidence would be admissible at the hearing.[3] It limited Mrs. Duncan's discovery to: (a) evidence substantiating that fraud was practiced on the trial court,[4] including deliberately withholding facts at trial; (b) evidence of any negotiations pertaining to the sale of the alarm company entered into during the trial;[5] (c) evidence that Mr. Duncan had actual knowledge at the time of trial or immediately thereafter that his share of the business was worth more than $400,000; and (d) evidence in Mr. Duncan's possession at the time of trial concerning his stock's value and pending sale that was not introduced at trial. The trial court also stated repeatedly in its order that it would not consider any evidence that was "available" at the time of trial.

During the seventeen months between the discovery order and the hearing, Mrs. Duncan deposed five of the eight persons she originally sought to depose in 1983 and apparently could have deposed the remaining three. In addition, she deposed Mr. Duncan's secretary and two of the attorneys who were involved in the sale of the alarm company. She also obtained documents from Mr. Duncan and the company that bought his business relating to the negotiations and sale.

---

**3.** It would have been preferable to more clearly separate the issues of discoverability and admissibility since they involve different standards.

**4.** Restricting the discovery to fraud on the court was inappropriate since Tenn.R.Civ.P. 60.02(2) motions are not limited to extrinsic fraud.

Post-judgment relief is available under Tenn.R. Civ.P. 60.02(2) for intrinsic fraud as well.

**5.** Later, the trial court expanded the order to permit the discovery of negotiations conducted through September 30, 1982.

## C.

█ The April, 1987 discovery order was premature for two reasons. First, Mrs. Duncan had not conducted any discovery with regard to her motion when the trial court entered the order. Second, Mr. Duncan made no effort to show that the scope or manner of Mrs. Duncan's intended discovery was unduly burdensome or oppressive or that it was repetitious of discovery that had already taken place. The allegations in Mrs. Duncan's motion are the sort that warranted rigorous inquiry, and the trial court should have permitted her to proceed since there was no specific proof that her activities exceeded the bounds of reasonableness.

█ Likewise, the trial court should not have limited the scope of discovery to evidence that was "available" at the time of trial. In light of the policy favoring latitude in proof regarding fraud, *see Katzenberger v. Leedom & Co.*, 103 Tenn. 144, 154, 52 S.W. 35, 37 (1899), the trial court should have permitted Mrs. Duncan to discover any evidence reasonably calculated to lead to the discovery of evidence relevant to the fraud issue. *See* Tenn.R.Civ.P. 26.-01.

Evidence concerning the sale of the alarm business would not have been "available" at trial because the sale did not occur until approximately eight months after the entry of the divorce decree. However, evidence concerning the negotiations and sale could have been relevant to the issues raised in Mrs. Duncan's motion because it could have led to other admissible evidence or it could have provided circumstantial evidence concerning Mr. Duncan's knowledge or opinion of the value of his business at the time of the trial. Thus, evidence concerning the negotiations and sale of the alarm business should have been discoverable without limitation.

The only other type of evidence that would have been relevant to Mrs. Duncan's motion would have been evidence that was in existence at the time of trial. Evidence cannot be withheld unless it exists. However, evidence existing at the time of trial would not necessarily have been "available" to Mrs. Duncan if, in fact, Mr. Duncan was withholding or concealing it. The "availability" limitation in the trial court's discovery order was unnecessarily vague and restrictive.[6]

█ The shortcomings in the discovery order do not necessarily warrant reversing the trial court's denial of Mrs. Duncan's motion. Tenn.R.App.P. 36(b) requires relief only when an error "more likely than not affected the judgment or would result in prejudice to the judicial process." Mrs. Duncan was able to obtain discovery from virtually all the persons and sources identified in her original discovery requests. She has not pointed to any practical impairment of her ability to discover evidence relevant to her claim caused by the discovery order. Therefore, the errors in the discovery order are not of sufficient magnitude to require reversal of the trial court's decision.

## III.

Mrs. Duncan also asserts that she was entitled to post-judgment relief under Tenn.R.Civ.P. 60.02(2) because Mr. Duncan had intentionally withheld evidence concerning the alarm company's value. Her evidence does not support this claim, even considering the evidence contained in her various tenders of proof.

## A.

There is little disagreement that the traditional preference for finality brings disputes to an end and promotes judicial economy. *See Thomas v. Dockery*, 33 Tenn. App. 695, 703, 232 S.W.2d 594, 598 (1950). However, as beneficial as it is, finality is relative and contextual. Our courts' interest in making correct decisions in each case dictates caution in placing errors beyond correction. 6A J. Moore, J. Lucas & G.

---

**6.** The trial court explained in the memorandum denying Mrs. Duncan's motion that the purpose of the discovery order had been "to limit evidence to that which was in existence at the time of trial or that which through due diligence could have been discovered at that time." This explanation came after the discovery was completed and was, therefore, too late.

Grotheer, *Moore's Federal Practice* ¶ 60.02 (2d ed. 1989).

Tenn.R.Civ.P. 60.02 itself strikes a balance between the competing desires for finality and for correctness. *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976); C. Wright & A. Miller, *Federal Practice and Procedure* § 2857 (1973). Tenn.R.Civ.P. 60.02(2) specifically provides that otherwise final judgments tainted by fraud, misrepresentation, or other misconduct may be set aside within one year after their entry. Judges need not balance finality and correctness when a timely Tenn.R. Civ.P. 60.02(2) motion is filed. If the motion is substantiated, they should unhesitatingly set the tainted judgment aside.

 The party seeking relief under Tenn.R.Civ.P. 60.02(2) has the burden of proof. *Trice v. Moyers,* 561 S.W.2d 153, 156 (Tenn.1978); *Holt v. Holt,* 751 S.W.2d 426, 428 (Tenn.Ct.App.1988). In order to succeed, the moving party must describe the basis for relief with specificity, *Hopkins v. Hopkins,* 572 S.W.2d 639, 640 (Tenn.1978), and must show by clear and convincing evidence that post-judgment relief is warranted. *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 926 (1st Cir.1988); *West v. Love,* 776 F.2d 170, 176 (7th Cir.1985); *Cumber v. Cumber,* 326 N.W.2d 194, 195 (N.D.1982); 7 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 60.24[5] (2d ed. 1989); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2860 (1973).

 Tenn.R.Civ.P. 60.02(2) motions disregard the old, arcane distinction between intrinsic and extrinsic fraud.[7] Accordingly, post-judgment relief is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to

> an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.

*Leeson v. Chernau,* 734 S.W.2d 634, 638 (Tenn.Ct.App.1987). Both withholding evidence and the knowing use of perjured testimony can provide grounds for granting post-judgment relief pursuant to Tenn. R.Civ.P. 60.02(2). *Anderson v. Cryovac, Inc.,* 862 F.2d at 923 (withholding evidence); *Harre v. A.H. Robins Co.,* 750 F.2d 1501, 1503 (11th Cir.1985) (perjured testimony); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978) (withholding evidence); *Pina v. McGill Dev. Corp.,* 388 Mass. 159, 445 N.E.2d 1059, 1063–64 (1983) (perjured testimony); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2861 (1973).

### B.

 The proof shows that Mr. Duncan had preliminary conversations during the trial with a professional associate which eventually led to the negotiations resulting in the sale of the alarm business for $5.5 million. However, Mrs. Duncan failed to prove by clear and convincing evidence that, at the time of the divorce trial, Mr. Duncan knew or possessed information that his share of the business was worth more than $400,000.

About the time the divorce trial began in May, 1982, Mr. Duncan and Charles Brooks, the co-owner of the business, decided that they would consider selling the company within two or three years because of Mr. Brooks' health problems. In July, 1982, Mr. Duncan contacted Franklin C. Cole, a business acquaintance who had previously expressed an interest in buying the company, to find out what types of financial information a prospective buyer might request. Mr. Cole sent Mr. Duncan the financial questionnaire his company used when considering the acquisition of a business.

Mr. Duncan did not respond to Mr. Cole's questionnaire until August, 1982. Mr. Cole was employed by another company by that time, but he told Mr. Duncan that his new company was interested in buying Mr. Duncan's business. In August, 1982, Mr. Duncan and Mr. Cole signed a standard

---

7. *See Nobes v. Earhart,* 769 S.W.2d 868, 874 (Tenn.Ct.App.1988).

non-disclosure agreement because Mr. Duncan desired to prevent the release of his company's financial information to his competitors. Mr. Cole and Mr. Duncan did not begin to negotiate concerning the sale of the company at that time.

The trial court entered the final decree in the divorce case in September, 1982. However, Mr. Duncan did not begin formal, "eyeball to eyeball" negotiations with any potential purchaser until November, 1982. The first negotiations with Honeywell ended unsuccessfully in early 1983 because of tax problems with the way Honeywell wanted to structure the deal. The next negotiations were with Allied Security. Even though Allied Security made a $4 to $5 million offer in January, 1983, Mr. Duncan began "talking money" with Mr. Cole's company in early 1983. In April, 1983, Mr. Cole agreed to purchase Mr. Duncan's alarm company for $5.5 million.

> The trial court found that
> after the Final Decree became final and negotiations involving the possible sale began, a seller's market came into existence at about the same time several securty [sic] companies began to express an interest in acquiring Security Alarms and Services, Inc. and these competing interests in turn drove the value of the company far above anyone's expectations.

Mrs. Duncan has pointed to no clear and convincing evidence supporting a contrary conclusion. Accordingly, we have no basis to disagree with the trial court's finding.

We recognize Mrs. Duncan's skepticism concerning the trial court's valuation of her husband's business. However, skepticism alone is not sufficient to set aside an otherwise final judgment. To do so, a party must meet Tenn.R.Civ.P. 60.02's requirements. There is no direct proof in this case that Mr. Duncan perjured himself or that he withheld information in his possession at the time of trial. In fact, he declined to give an opinion concerning his company's value, and there is no indication that he withheld information from Mrs. Duncan's accountants needed to place a value on the company. Therefore, we affirm the trial court's denial of post-judgment relief.

## IV.

■ Finally, Mrs. Duncan argues that she was entitled to post-judgment relief under the catch-all provision in Tenn.R. Civ.P. 60.02(5). Despite its broad language, this provision has been narrowly construed. *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn.Ct.App.1984). It is intended to provide post-judgment relief only in the most unique, exceptional, or extraordinary circumstances. *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn.1976); *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn.Ct.App. 1984).

■ Tenn.R.Civ.P. 60.02(5)'s standards are more demanding than those applicable to the other grounds for Tenn.R. Civ.P. 60.02 relief. *Tennessee Dep't of Human Serv's v. Barbee*, 689 S.W.2d 863, 866 (Tenn.1985). It is, as a general rule, applicable to situations that are not covered by the other clauses in Tenn.R.Civ.P. 60.02 or to cases of extreme hardship. *See* 7 J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 60.27[2] (2d ed. 1989); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2864, at 216 (1973).

■ This is not the extraordinary type of case involving extreme hardship that warrants post-judgment relief under Tenn. R.Civ.P. 60.02(5). Mrs. Duncan's motion was premised on fraud, misrepresentation and misconduct, all grounds for relief under Tenn.R.Civ.P. 60.02(2). The motion was timely filed, and there was no procedural impediment preventing the trial court from considering it pursuant to Tenn.R. Civ.P. 60.02(2). Having failed to convince the trial court that she was entitled to relief under Tenn.R.Civ.P. 60.02(2), Mrs. Duncan cannot seek solace in Tenn.R.Civ.P. 60.02(5). If her motion did not pass muster under Tenn.R.Civ.P. 60.02(2), it could not pass muster under Tenn.R.Civ.P. 60.02(5).

## V.

We affirm the trial court's dismissal of Mrs. Duncan's motion for post-judgment relief and remand the case to the trial court for whatever further proceedings are nec-

essary. We also tax the costs of this appeal to Mrs. Duncan and her surety for which execution, if necessary, may issue.

TODD, P.J., and IRVIN H. KILCREASE, Jr., Special Judge, concur.