# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 19, 2017 Session

## JAMIE TREADWELL v. GARY THOMAS LAMB

**Appeal from the Circuit Court for Franklin County**
**No. 18018CV      Thomas W. Graham, Judge**

_____

## No. M2015-01391-COA-R3-CV
_____

This appeal involves the financial aspects of a divorce, which ended a twelve-year marriage. The trial court granted both parties a divorce, divided the marital estate, and awarded Wife rehabilitative alimony for twenty-four months, provided she actively pursued a teaching degree at Middle Tennessee State University. Wife filed a motion to alter or amend the award of alimony to remove the education and vocation requirements. The trial court denied the motion. Wife filed a motion pursuant to Tennessee Rule of Civil Procedure 60.02 seeking relief from the trial court's order dividing the marital estate due to Husband's alleged fraudulent withdrawals from the parties' marital stock account. The trial court denied the motion. On appeal, Wife takes issue with the educational and vocational requirements the trial court placed on the spousal support award and with the trial court's division of the marital estate. She also appeals the trial court's denial of her Rule 60.02 motion. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Cynthia A. Cheatham, Manchester, Tennessee, for the appellant, Jamie Treadwell.

William A. Lockhart, Tullahoma, Tennessee, for the appellee, Gary Thomas Lamb.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Jamie Treadwell Lamb ("Wife") and Gary Thomas Lamb ("Husband") married on September 12, 1998. One child was born of the marriage.[1]

Husband had a bachelor's degree in computer science and worked as a software engineer throughout the marriage. Wife had two years of college in pursuit of an education degree. During the early years of the marriage, Wife first worked for a medical equipment company and then worked in real estate after obtaining her real estate license. She eventually stopped working when the parties' son was born in December 2000. The couple acquired several real properties and operated an antique store during the course of the marriage. Husband acquired substantial assets in employer-related investment accounts.

Husband filed for divorce on September 17, 2010, alleging inappropriate marital conduct and irreconcilable differences. Wife filed an answer followed by an amended answer and counter-complaint for divorce on the same grounds as those alleged by Husband. Wife sought alimony, attorney's fees, and an equitable division of the marital estate.

The trial court heard the case on March 4 and March 11, 2013. The parties were unable to agree on the classification of their assets. Their disagreements primarily centered on three real properties located in Decherd, Tennessee: (1) 510 Spring Street, (2) 403 Bennett Street, and (3) 508 Spring Street. Each will be discussed further in the analysis section of this opinion. The trial court entered a final decree of divorce and permanent parenting plan on December 3, 2010. An amended final decree of divorce was entered on December 10, 2010. In the amended final decree, the trial court awarded a divorce to both parties, established custody, ordered the sale of personal property and real property, divided the marital estate equally between the parties, and awarded Wife spousal support in the amount of $2,444 for twenty-four months, provided she pursued an education degree from Middle Tennessee State University. Additionally, the trial court found three assets to be Husband's separate property: (1) Jacobs/Vanguard Investment Account, (2) 510 Spring Street, and (3) 403 Bennett Street.

Wife filed a motion asking the trial court to alter or amend the alimony award by removing the vocational and educational requirements because she no longer wished to become a teacher. The trial court denied the motion to alter or amend the alimony award. Wife then filed a Tennessee Rule of Civil Procedure 60.02 motion alleging that Husband

---

[1] The parties' child is still a minor. Custody is not an issue on appeal.

fraudulently removed funds from a marital stock account.  The trial court denied the Rule 60.02 motion, and Wife appealed.

Wife raises three issues on appeal.  First, she contends that the trial court abused its discretion by placing educational and vocational conditions on the spousal support award.  Second, she contends that the trial court erred in classifying certain pieces of real property as Husband's separate property. Lastly, she argues that the trial court erred in denying her Rule 60.02 motion.  We shall address each issue in turn.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise.  TENN. R. APP. P. 13(d); *Church v. Church*, 346 S.W.3d 474, 481 (Tenn. Ct. App. 2010).  On the other hand, questions of law are reviewed de novo and accorded no presumption of correctness.  *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

ANALYSIS

(1)

Spousal Support Award

A.      Rehabilitative Alimony

There are no bright-line rules for trial courts to follow when making spousal support decisions.  *Owens v. Owens*, 241 S.W.3d 478, 493 (Tenn. Ct. App. 2007) (citing *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001)).  "Trial courts have broad discretion to determine whether spousal support is needed" as well as the nature, amount, and duration of the support.  *Id.*; *see also Gorman v. Gorman*, No. M2010-02620-COA-R3-CV, 2011 WL 5599867, at *2 (Tenn. Ct. App. Nov. 16, 2011).  A trial court's decision to award spousal support is "factually driven and involves the careful balancing of many factors."  *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).  Consequently, appellate courts generally refuse to second-guess a trial court's decision unless there has been an abuse of discretion.  *Id.*  "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice."  *Id.*  (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)).  An appellate court's role is not to substitute its judgment for that of the trial court, but rather to presume that the trial court's decision is correct and to review the evidence "in the light most favorable to the decision."  *Wright*, 337 S.W.3d at 176.

Tennessee law recognizes four types of spousal support:  1) alimony in futuro (long-term support); 2) transitional alimony; 3) alimony in solido (lump sum alimony); and 4) rehabilitative alimony.  Tenn. Code Ann. § 36-5-121(d)(1); *Gonsewski*, 350 S.W.3d at 107.  There is a legislative preference favoring rehabilitative spousal support over long-term support.  Tenn. Code Ann. § 36-5-121(d)(2); *Owens*, 241 S.W.3d at 493.  Despite this legislative preference, long-term or more open-ended support may be awarded when warranted by the facts of the case.  *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).  The purpose of rehabilitative support is to facilitate the disadvantaged spouse in obtaining additional job skills, education, or training so that he or she will become more self-sufficient.  *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998).  By contrast, the purpose of long-term spousal support is to "provide support to a disadvantaged spouse who is unable to achieve some degree of self-sufficiency."  *Id.*

In determining whether to award spousal support, and in determining the nature, amount, length of term, and manner of payment, courts consider the following factors:

(1)  The relative earning capacity, obligations, needs, and financial resources of each party, including, income from pension, profit sharing or retirement plans and all other sources;

(2)  The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)  The duration of the marriage;

(4)  The age and mental condition of each party;

(5)  The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)  The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)  The separate assets of each party, both real and personal, tangible and intangible;

(8)  The provisions made with regard to the marital property, as defined in § 36-4-121;

- 4 -

(9)  The standard of living of the parties established during the marriage;

(10)  The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)  The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)  Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).  The two most important factors are the disadvantaged spouse's need and the obligor spouse's ability to pay.  *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002); *Riggs*, 250 S.W.3d at 457; *Owens*, 241 S.W.3d at 494.

The trial court awarded Wife spousal support in the amended final decree, which stated in pertinent part:

ORDERED, ADJUDGED AND DECREED that the Defendant, Jamie Lamb, receive alimony in the amount of $2,444.00 per month, provided Defendant is actively pursuing and showing proper progress in a Teacher Certification Program at Middle Tennessee State University for a period not to exceed twenty-four (24) months.

Although the trial court failed to identify the type of alimony it awarded Wife, we believe the duration of the support, in addition to the educational and vocational requirements, indicate an award of rehabilitative alimony.  *Sommerville v. Sommerville*, No. 01A01-9502-CV-0007, 1995 WL 498943, at *2 (Tenn. Ct. App. Aug. 23, 1995) ("If the object of the award is to allow a disadvantaged spouse to get back on his or her feet or to acquire an education or a skill, the award may be rehabilitative.").

A trial court is supposed to make a threshold determination that a spouse is economically disadvantaged in relation to the other spouse, as well as find that rehabilitation is possible, before making an award of rehabilitative alimony.  *Gillespie v. Gillespie*, No. E2006-00734-R3-CV, 2006 WL 3732195, at *3 (Tenn. Ct. App. Dec. 19, 2006); *see Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).  The trial court failed to make a factual finding either that Wife was economically disadvantaged relative to Husband or that she could be rehabilitated.  Therefore, we must conduct an independent review of the record to determine where the preponderance of the evidence lies with regard to this issue.  *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Wife was forty-seven years old at the time of trial, and there was no evidence presented to indicate she had any health issues. At the time of the marriage, Wife worked for a medical supply company earning $40,000 per year. She later obtained a real estate license and worked in real estate. However, Wife spent ten years out of the workforce so she could remain at home to raise the parties' child and assist in managing their antique store and rental properties. At the time of trial, she worked part-time for a greeting card store earning $300 per month. Wife has two years of college towards an education degree and testified that she anticipated completing her college degree in two years. This additional education can be expected to increase Wife's ability to earn more income than she is currently earning. Wife testified that she could earn $40,000 per year as a teacher.

Husband, who was fifty-two years old at the time of trial, has a college degree and works as a software engineer. Tax returns adduced at trial showed that Husband earned $265,000 in 2010, $337,146 in 2011, and $204,541 in 2012. After conducting a thorough examination of the record, we conclude that the evidence preponderates in favor of finding that Wife is economically disadvantaged relative to Husband and that she can be rehabilitated. In light of these facts and the relevant factors in Tenn. Code Ann. § 36-5-121, we conclude that rehabilitative alimony is appropriate and consistent with the legislative preference to rehabilitate the disadvantaged spouse whenever possible. *see Robertson*, 76 S.W.3d at 339.

On appeal, Wife contends that the trial court abused its discretion by placing educational and vocational conditions on the award of spousal support. We disagree. As discussed above, trial courts are accorded broad discretion when making spousal support decisions. *Gorman*, 2011 WL 5599867, at *2; *Owens*, 241 S.W.3d at 493. The Tennessee Supreme Court stated in *Isbell v. Isbell*, 816 S.W.2d 735 (Tenn. 1991), "Where rehabilitative support is awarded, it may be made subject to conditions imposed by the court or agreed to by the parties." *Isbell*, 816 S.W.2d at 739 (footnote omitted). At the time of the *Isbell* decision, trial courts placed conditions on awards of rehabilitative alimony in order to retain control of the award because rehabilitative alimony awards were modifiable only if made subject to conditions or if they were not for a sum certain over a set period of time. *Id.* at 739 n.1. Current Tennessee law, however, grants trial courts control of an award of rehabilitative alimony for the duration of the award. Tenn. Code. Ann. § 36-5-121(e)(2). While the current statute gives trial courts control of rehabilitative alimony awards without requiring the awards be subject to conditions, it does not prohibit trial courts from placing conditions on rehabilitative alimony awards. *Id.*

It is not uncommon for a court to place conditions on a spousal support award, such as termination upon remarriage of the recipient spouse, or termination upon failure of the recipient spouse to meet certain requirements. *Kuhlo v. Kuhlo*, No. M2015-02155-COA-R3-CV, 2016 WL 3537198, at *10 (Tenn. Ct. App. June 23, 2016) (perm. app. denied Oct. 19, 2016) ("[A] condition for Wife receiving the transitional alimony is that

Wife had to work to receive the extra ten percent by providing bookkeeping services . . . pending the sale of the properties."); *Jackman v. Jackman*, 373 S.W.3d 535, 538 (Tenn. Ct. App. 2011) ("[T]rial court ordered Wife to undergo a vocational rehabilitation evaluation and enroll in a displaced spouses program" and "stressed that Wife's failure to do so could result in termination of her alimony award."); *Harris v. Harris*, No. M2008-00601-COA-R3-CV, 2009 WL 416007, at *4 (Tenn. Ct. App. Feb. 18, 2009) ("[A] court may provide in its decree that transitional alimony will automatically terminate upon remarriage of the payee . . . so long as such an agreement is incorporated into the decree.").

We note that the educational and vocational conditions the trial court placed on the award of rehabilitative alimony reflect Wife's requests at trial. On direct examination, Wife testified:

THE COURT: So how much longer do you have to get to a degree in college?

THE WITNESS: I could probably, if I really put my nose to the grindstone, finish in about a year and a half.

THE COURT: How many hours do you need?

THE WITNESS: I'd have to go back and look, but I have – I'm down to the finish. I'm pretty close. You know, and I say a year and a half, but, you know, with Andrew and everything, probably two.

THE COURT: This would be a degree in education?

THE WITNESS: Yes, sir. Early -- I'd like to teach middle school. It's probably two years. I mean, just for the benefit of a doubt.

Q. Have you looked into and been able to determine what the cost will be for you to complete your degree?

A. I have, and I put that on that sheet. I just, like I said, I amortized it, you know, based on the – like, a semester. It would be about 676, and I think that included books for a semester.
. . . .
THE COURT: Are you asking the Court to make an award of rehabilitative alimony?

A. You know – and I don't expect [Husband] to raise me, but I would like to get on my feet and start a career that I could, you know, take care of

myself and our son, and, you know, so I could look forward to some retirement at some point in my life.

Q. And your decision is to go into education?

A. Yes, sir.

Wife received what she requested from the trial court. Accordingly, we conclude the trial court did not abuse its discretion by placing educational and vocational requirements on its award of rehabilitative alimony.

### B. Motion to Alter or Amend

Wife contends that the trial court abused its discretion by denying her motion to alter or amend the award of rehabilitative alimony and argues the court subsequently terminated her rehabilitative alimony. Wife filed her motion to alter or amend pursuant to Tenn. R. Civ. P. 59.04. A motion to alter or amend a final judgment filed pursuant to Rule 59.04 allows a trial court "to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005), and a trial court's ruling on the motion "will be reversed only for an abuse of discretion." *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). Motions to alter or amend a judgment pursuant to Rule 59.04 may be granted "'(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.'" *Whalum v. Marshall*, 224 S.W.3d 169, 175 (Tenn. Ct. App. 2006) (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)). The moving party bears the burden of showing a basis for amending the judgment. *Smith v. Smith*, No. M2007-02650-COA-R3-CV, 2008 WL 5158189, at *2 (Tenn. Ct. App. Dec. 8, 2008).

Because Wife did not allege that there was a change in the law or that previously unavailable evidence had become available, her request for relief falls into the third category: the judgment should be altered or amended to correct a clear error of law or prevent injustice. The transcript of the hearing reveals that Wife requested that the trial court alter or amend the award of rehabilitative alimony by removing the educational and vocational requirements because she no longer desired to become a teacher. She testified she had started working for a science center as an education director and grant writer, and she desired to continue in that capacity. Wife argued there is no case or statute that permits a court to determine the educational and vocational decisions of the recipient spouse, "except as it pertains to a determination that the party has not made an effort to rehabilitate herself after a certain period of time." As discussed above, a trial court is not prohibited from placing conditions on an award of spousal support, and it is not appropriate for this Court to substitute our judgment for that of the trial court.

After reviewing Wife's assertions regarding the educational and vocational requirements, as well as the record, we conclude that Wife has failed to meet her burden of showing the trial court abused its discretion in placing conditions on her award of rehabilitative alimony. Therefore, we affirm the trial court's denial of Wife's motion.

Finally, Wife argues that the trial court erred when it terminated the award of rehabilitative alimony. The trial court's order denying Wife's motion to alter or amend did not terminate the alimony award. In its order, the trial court stated, "The Court previously ruled that in order for [Wife] to receive alimony, she must be enrolled at Middle Tennessee State University, fulltime, in the teaching program as the court has previously ordered in the initial Amended Final Decree." This language differs from that of the amended final decree, which ordered that Wife was to receive alimony "provided [Wife] is actively pursuing and showing proper progress in a Teacher Certification Program at Middle Tennessee State University for a period not to exceed twenty-four (24) months." Wife contends that the change in language effectively terminated the rehabilitative alimony award. At the motion hearing, however, Wife testified that she had attempted to enroll in only one class during the year-and-a-half time period between the amended final decree and the motion hearing. Because Wife failed to fulfill the conditions placed on the alimony award as set forth in the amended final decree, the alimony award terminated by its own terms. We conclude, therefore, that the change in language did not constitute reversible error.

(2)

Husband's Separate Property

We turn now to the trial court's classification of three real properties as Husband's separate property. Wife argues that the trial court erred by classifying these properties as Husband's separate property and contends they should have been included in the marital estate under the doctrine of transmutation.

Division of a marital estate begins with the identification of all of the parties' property interests. *Owens*, 241 S.W.3d at 485. Next, these property interests must be classified as either separate or marital. *Id.*; *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *2 (Tenn. Ct. App. Sept. 1, 2006). Decisions pertaining to the classification of property as either separate or marital are intrinsically factual. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Consequently, a trial court's classification of property as either separate or marital will not be disturbed unless it is not supported by a preponderance of the evidence. *See* TENN. R. APP. P. 13(d); *Owens*, 241 S.W.3d at 485.

Separate property is defined as "[a]ll real and personal property owned by a spouse before marriage[.]" Tenn. Code Ann. § 36-4-121(b)(2)(A). Conversely, marital

property is defined as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). Only marital property is subject to division upon the dissolution of a marriage. Tenn. Code Ann. § 36-4-121(a); *Smith v. Smith*, 93 S.W.3d 871, 876 (Tenn. Ct. App. 2002).

The demarcation between separate and marital property is not always clear. If one spouse gives property to the other spouse that might otherwise be considered marital property, the gifted property becomes the recipient spouse's separate property. *Kinard*, 986 S.W.2d at 232. Conversely, separate property can become marital property by either commingling or transmutation:

> "[S]eparate property becomes marital property [by commingling] if inextricably mingled with the marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur . . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property . . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate."

*Takeda v. Takeda*, No. E2006-02499-COA-R3-CV, 2007 WL 4374036, at *3 (Tenn. Ct. App. Dec. 17, 2007) (quoting *Langschmidt*, 81 S.W.3d at 747 (citations omitted)).

A. 510 Spring Street

The first disputed property we will address is the 510 Spring Street property. The trial court classified this asset as Husband's separate property. Wife contends that, while this asset was Husband's separate property at the time of the marriage, the asset transmuted into marital property because the parties treated it as a marital property.

The parties used the 510 Spring Street property as their sole marital residence throughout their twelve-year marriage. We have previously noted in regard to a marital residence:

> "A residence should not be classified as marital property simply because the parties have lived in it. However, as a general matter, a marital

residence acquired by the parties during the marriage and owned by the parties jointly should be classified as marital property. Even a marital residence that was . . . purchased using separate property should be classified as marital property if the parties owned it jointly because joint ownership gives rise to a rebuttable presumption that the property is marital, rather than separate property.

However, as relevant as record ownership may be to the classification of an asset, it is not always controlling. In the final analysis, whether a particular asset is marital or separate depends on the conduct of the parties not the record title of the asset . . .

Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property."

*Takeda*, 2007 WL 4374036, at *3 (quoting *Fox*, 2006 WL 2535407, at *5).

Evidence adduced at trial shows that Husband purchased the property in 1984, and he paid off the mortgage on the property prior to the marriage. Additionally, title to the property remained in Husband's name only for the duration of the marriage. There is little evidence concerning Wife's efforts to preserve or increase the value of this property. In fact, the record shows that both parties allowed the property to fall into a state of disrepair.[2]

The record shows that Husband used the property as collateral twice during the marriage. The first time was for a $15,000 loan in 2003, and the second time was for a $35,000 loan in 2007. Each time Husband used the property as collateral he used the loan obtained to purchase one of the parties' rental properties, and both loans were paid off during the marriage.[3] Wife signed both deeds of trust connected to the two loans. Wife contends that using the property as collateral and affixing her signature to the deeds of trust transmuted the property into marital property.

In *Sandford v. McKee*, M2010-00562-COA-R3-CV, 2012 WL 4474177 (Tenn. Ct. App. Sept. 27, 2012), Chas Sandford purchased a 63-acre farm with a house on it prior to marrying Kristine Sandford. *Sandford*, 2012 WL 4474177 at *1. Mr. Sandford took out

---

[2] The record includes pictures of the house showing a tarp over sections of the roof and poorly patched plumbing.

[3] The trial court classified the rental properties as marital property, and they are not disputed on appeal.

a mortgage on the property seven years into the marriage, and both Mr. and Mrs. Sandford signed the deed of trust connected with this mortgage. *Id.* at *2. Mr. Sandford obtained a home equity loan on the property six months later, using the house and 63 acres as security for the loan. *Id.* Mr. and Mrs. Sandford again both signed the deed of trust. *Id.* Mrs. Sandford argued that her signature on the deeds of trust transmuted the property into a marital asset. *Id.* at *3. We disagreed and stated:

> We do not believe that Wife's signature on the Deeds of Trust has any effect on her ownership interest . . . . It is not unusual for a bank, when loaning money to one spouse who is the record owner of a piece of property, to require the other spouse to sign a Deed of Trust to protect the bank's interest in the property. . . . *[T]he act of signing one or more Deeds of Trust, without more, does not transfer any rights in the property to the nonowner spouse that he or she does not otherwise have.*

*Id.* at *6 (emphasis added).

In this case, Wife presented no evidence that she signed the note for either loan, assumed liability for either note, or that she made any payments on either loan. The evidence, therefore, does not preponderate against the trial court's classification of the property as Husband's separate property, and we conclude that the property did not become marital property as a result of transmutation.

B.      403 Bennett Street

We now turn to the second disputed property, the 403 Bennett Street property. The trial court classified this property as Husband's separate property as well. Wife asserts that the trial court erred because she contributed "sweat equity" to the property, which transmuted it into marital property.

Husband purchased the property in 1996 and paid off the mortgage associated with the property prior to the marriage by using an inheritance he received from his mother's estate. The property served as one of several rental properties the parties managed during their marriage. According to Wife, she contributed "sweat equity" towards the property by managing the property, cleaning and repainting after tenants moved out, and digging a ditch.

If property determined to be separate property increases in value during the marriage, the appreciation will be classified as marital property "if each party substantially contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B); *see also Keyt v. Keyt*, 244 S.W.3d 321, 328-29 (Tenn. 2007); *Summer v. Summer*, 296 S.W.3d 57, 62 (Tenn. Ct. App. 2008). The Supreme Court has stated the following in regards to the contributions of a non-owner spouse:

While these contributions may be either "direct" or "indirect," Tenn. Code Ann. § 36-4-121(b)(1)(D), they must satisfy two requirements. *McFarland v. McFarland*, No. M2005-01260-COA-R3-CV, 2007 WL 2254576, at *6 (Tenn. Ct. App. Aug. 6, 2007). First, the contributions must be "real and significant." *Id.*; *Brown* [*v. Brown*], 913 S.W.2d [163, 167 (Tenn. Ct. App. 1994)]. "Second, there must be some link between the spouses' contributions and the appreciation in the value of the separate property." *McFarland*, 2007 WL 2254576, at *6; *Landgschmidt*, 81 S.W.3d at 746. Whether a spouse made a "substantial contribution" to the preservation and appreciation of separate property is a question of fact. *Sherrill v. Sherrill*, 831 S.W.3d 293, 295 (Tenn. Ct. App. 1992).

*Keyt*, 244 S.W.3d at 329.

In the present case, the trial court classified the 403 Bennett Street property as Husband's separate property but made no findings of fact regarding an appreciation in the value of the property during the parties' marriage. Examination of the record reveals there was no evidence introduced at trial that the property increased in value while the parties were married. In fact, Husband testified that every property he owned was in "bad shape" and in need of "significant" financial investment. Because there was no evidence adduced at trial that the property increased in value during the marriage, we need not consider whether Wife's actions constituted a substantial contribution. The evidence, therefore, does not preponderate against the trial court's classification of the property as Husband's separate property.

C.     508 Spring Street

The final property in dispute is 508 Spring Street. This property is a triplex located next door to the marital residence, and it generated rental income for the parties. Husband acquired 508 Spring Street in 1996; however, Husband continued to make payments on the loan connected to the property until six years after the parties married. As a result, the trial court classified the property as marital property and awarded it to Husband. The trial court awarded Wife $10,000 for her interest in the property.

On appeal, Wife argues that this property, like the two above, should have been classified as marital property under the doctrine of transmutation. This argument is without merit because the trial court classified the property as a marital asset and included it in its division of the marital estate.[4]

---

[4] Under the "Statement of the Case" section of Wife's brief, Wife raises the issue that the trial court erred by failing to assign a value to the 508 Spring Street Property before dividing the marital estate. Wife does not address this issue in the "Argument" section of her brief. Tennessee Rules of Appellate Procedure 27(a)(7) states that an appellant's brief shall contain:

An argument, which may be preceded by a summary of argument, setting forth . . . the

(3)

## Rule 60.02 Motion

After the trial court entered the supplemental order, which denied Wife's motion to alter or amend the alimony award and incorporated by reference the amended final decree of divorce, Wife filed a motion entitled "Petition for Finding of Fraudulent Transfers of Marital Assets in Anticipation of Divorce and for Contempt of Court through Violation of the Statutory Restraining Order." In the pleading, Wife alleged that Husband fraudulently withdrew approximately $388,000 from the parties' marital stock account. According to Wife, the withdrawals began in 2009, prior to Husband filing for divorce, and continued through 2014. Wife contended in the pleading, and on appeal, that these withdrawals were fraudulent because Husband made them for "the sole purpose of depleting the marital estate." Accordingly, Wife filed the motion seeking relief from the trial court's prior order dividing the parties' marital property, specifically the marital stock account, to reflect the unauthorized withdrawals made by Husband.[5] The trial court denied Wife's motion; it found that Husband's withdrawals were "reasonable and necessary" because the trial court had previously ordered him to make payments "in the natural course of business in maintaining the parties' marital assets."

Wife's petition states that it is brought under Tennessee Rule of Civil Procedure 60.01, which provides relief when the judgment or order shows on its face that it contains errors caused by oversight or omission. TENN. R. CIV. P. 60.01; *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Wife points to no such error. Consequently, the trial court properly construed the motion under Rule 60.02, which provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any

contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]

We conclude that Wife's failure to comply with the Rules of Appellate Procedure waives the issue for review. *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000).

[5] The trial court determined the division of the parties' marital property, including the stock account at issue on appeal, in the amended decree for divorce. The amended decree was incorporated by reference into the supplemental order, from which Wife sought Rule 60.02 relief.

other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

The disposition of a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure is within the sound discretion of the trial judge. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). Accordingly, appellate courts defer to a trial court's decision to either grant or deny relief pursuant to Rule 60.02, and we will uphold these decisions absent an abuse of discretion. *DeLong v. Vanderbilt Univ.*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005).

Relief under Rule 60.02 is an exceptional remedy that allows a court "'to alleviate the effect of an oppressive or onerous final judgment.'" *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)); *see also Dockery v. State*, No. M2006-00014-COA-R3-CV, 2007 WL 2198195, at *2 (Tenn. Ct. App. July 23, 2007). Our Supreme Court has described Rule 60.02 as an "'escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules.'" *Henderson*, 318 S.W.3d at 336 (quoting *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990)). A party seeking relief under Rule 60.02 must prove by clear and convincing evidence that it is entitled to relief. *Id.* This is a heavy burden because clear and convincing evidence is evidence "'in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Furlough v. Spherion Atlantic Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Additionally, a party who seeks Rule 60.02 relief on the ground of fraud must provide clear and convincing evidence of conduct that amounts to:

[A]n intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.

*Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE & PROC. § 2861 (1973)).

Guided by the foregoing principles, we now examine the proof Wife provided in support of her Rule 60.02 motion. The only proof Wife provided in support of her claim, in both the motion and at the hearing on the motion, consisted of the stock account's monthly statements, which showed withdrawals from the account. Wife presented no evidence that Husband concealed these withdrawals, or that he secreted the funds into another account. Husband testified that he made the withdrawals because he paid the

- 15 -

marital debts and expenses associated with the parties' rental properties from the stock account.

One of the withdrawals Wife relied on in support of her motion totaled $18,250. According to Wife, this withdrawal demonstrated that Husband made the withdrawal for his own benefit because it equaled the amount the Final Decree for Divorce ordered Husband to pay Wife as payment for the difference in the value in the parties' cars and for Wife's interest in the 508 Spring Street property. Wife, therefore, contends that Husband paid her with her own funds.

The trial found that Husband did not pay Wife with her own money, and the evidence does not preponderate otherwise. For example, Husband testified at the hearing on the motion that the Fidelity stock account from which he paid Wife the $18,250 was separate from the Fidelity stock account at issue. Husband testified that the stock account referenced by Wife's motion was a checking account, whereas the stock account from which he paid Wife the $18,250 was a vested stock account. Wife's half of the vested stock account remained untouched. The stock account statements alone are insufficient to meet Wife's burden by clear and convincing evidence. Accordingly, we conclude that the trial court did not abuse its discretion in denying Wife's Rule 60.02 motion.

In connection with the trial court's denial of Wife's Rule 60.02 motion, Wife argues that the trial court erred by precluding discovery related to the motion. Prior to filing the Rule 60.02 motion, Wife scheduled a deposition of Husband. Husband filed a motion for protective order pursuant to Tenn. R. Civ. P. 26.02 and 26.03 to prevent the deposition, which the trial court granted.

Decisions concerning discovery issues "rest within the sound discretion of the trial court." *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). Therefore, we apply the abuse of discretion standard when reviewing a trial court's decision to grant or deny discovery requests. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004). The Tennessee Rules of Civil Procedure favor discovery of any relevant evidence, unless the evidence is privileged or subject to protection. TENN. R. CIV. P. 26.02(1); *Duncan*, 789 S.W.2d at 560. Tennessee Rule of Civil Procedure 26.03 permits a trial court to limit discovery; however, the party opposing discovery has the burden of proving with more than conclusory statements and generalizations that limitations are necessary "'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Id.* at 561 (quoting TENN. R. CIV. P. 26.03). If a party seeking to limit discovery fails to support its request with specific facts, a trial court should deny the request. *Id.* Moreover, a trial court should "'balance one party's need for information against the injury that would allegedly result if disclosure is compelled,'" *In re NHC – Nashville Fire Litig.*, 293 S.W.3d 547, 563 (Tenn. Ct. App. 2008) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 658 (Tenn. 1996)), and it should consider the

availability of less burdensome methods for obtaining the requested information. *Duncan*, 789 S.W.2d at 561.

In his motion, Husband claimed a protective order should be issued because the discovery Wife sought via deposition was "unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome or less expensive[,]" and because Wife had abundant opportunity via other discovery in the case to acquire the information sought. The trial court agreed and granted Husband an order of protection precluding all discovery related to Wife's petition concerning the fraudulent transfers. The evidence in the record does not preponderate against this decision. At the hearing on the motion, Husband's counsel informed the trial court there had been several rounds of discovery in the case and the stock account statements that were at issue had been produced previously. Moreover, the record reveals that Wife's counsel acquired the stock account statements prior to the hearing concerning Husband's withdrawals from the stock account, which is evidenced by Wife's counsel using those stock account statements in support of the Rule 60.02 motion. We also note that Wife had the opportunity to cross-examine Husband about the alleged fraudulent transfers during the hearing on the Rule 60.02 motion. We find that Wife had sufficient opportunity to obtain the information she sought through prior discovery and conclude the trial court did not abuse its discretion in denying Wife's request for additional discovery related to her Rule 60.02 motion.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against appellant, Jamie Treadwell, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE